Good morning, Your Honors. May it please the Court, Tracy Cassidio for Petitioner-Appellant Wayne Clyde Mezzles. I'd like to focus, well, first of all, I'd like to try to reserve one to two minutes for rebuttal. I'd like to focus the Court today on the prosecutorial misconduct claim. And there we demonstrate that the prosecutor used his cross-examination of the defense mental state expert to hammer home the expert's inability to opine on the ultimate issue, which was whether Mr. Mezzles' PTSD and alcohol intake negated his specific intent to threaten the victims. And we've got a statement from the California courts that this was prosecutorial misconduct. We do, and in fact, not only prosecutorial misconduct, but deliberate misconduct in outright defiance of the trial court's several admonitions. And the problem here was that the California law precluded the expert from opining on this ultimate issue of whether or not Mr. Mezzles did or did not have specific intent. What the prosecutor did over the course of 18 transcript pages was to ask again and again and again whether the expert could opine on that specific intent. And just a couple of questions that the prosecutor asked. You have no way of knowing defendant's state of mind. You're not able to give an opinion on defendant's state of mind. How does PTSD translate to something being beyond one's control? And all of these questions were questions that the expert couldn't answer under California law. These questions and others elicited 16 separate objections from defense counsel, a sidebar, and four separate admonitions from the trial court. Again and again, the prosecutor was told, stop stepping over the line, and he continued to do so. I'm a little wondering why the trial judge didn't do something more severe, but that's water. Well, in fact, he apologized to the prosecutor for reprimanding him. So I think the court of appeal clearly saw that there was deliberate misconduct here and saw the problem. Where the court of appeal failed, however, was to find that the error was harmless. And that's the issue that's really before this court. Has the warden shown that the error was harmless under Brecht v. Abramson? And they can't. And there's many, many reasons for that. First of all, this testimony went to the core of Mr. Mesel's defense. His main defense was that he did not have the specific intent to threaten these people because of the PTSD. The feelings of hyperarousal, the lack of self-control, combined with the alcohol content. And we know that that evidence was meaningful because the trial court itself found that it was meaningful and sufficient to go to the jury. We also know that the prosecutor exploited his misconduct in his closing argument. It's prosecutorial misconduct, but the prosecutor keeps asking these questions and the expert keeps being prevented from answering. It's not as though the expert ever answered. It's the darn prosecutor who keeps saying this. Absolutely, Your Honor. But what happens is the prosecutor is hammering home this absence of evidence. This fact that there is no evidence before the jury on the ultimate question of whether Mr. Mesel's had the specific intent. So there's an expert, but he's not saying that Mr. Mesel's didn't have the specific intent. And that's the theme that the prosecutor hammered home again and again and again. And where we see this come up again in his closing statements where he says, we haven't seen evidence that actually shows the nexus between the PTSD and the specific intent. There has been no evidence that Mr. Mesel's was suffering from a PTSD flashback. There has been no statement indicating that Mr. Mesel's was reliving past abuse. But these were all things that went to the ultimate question. That same ultimate question that state law precluded the expert from opining on. I rather expect at some point that your adversary is going to say that we can't get to the merits. How would you respond to that? Well, let's talk about that. This is a situation in which defense counsel objected strenuously on 16 separate occasions. After the 12th objection, he asked for and obtained a sidebar. At the 15th objection, the court admonished the prosecutor over a string of questions four separate times. He also admonished the jury to disregard the prosecutor's last question. And at the end of the expert's testimony, the defense counsel moved for a mistrial. So we're seeing a concerted effort by this defense counsel to preserve this issue for review. What's the rule in California as to whether or not, at what point does it become a procedural bar? At what point is there sufficient admonition? I think that's a good question, Your Honor. The general rule is that you have to object to the misconduct and request an admonition. Now, of course, here the rule that was applied was the defense counsel didn't ask for an additional admonition. So he had received four separate admonitions of the prosecutor in front of the jury. Isn't the rule you have to request an admonition to the jury, not the lawyer? The rule does talk about admonitions to the jury and not the lawyer. And the jury was admonished to disregard the prosecutor's last question. But what about the other questions? There was no admonishment regarding the other questions. Did you as a trial lawyer think of an admonishment you would want the trial judge to have given? The California Court of Appeals seems to suggest that after moving for a mistrial and that being denied, that the trial counsel should have requested another admonition. But it was at that exact moment that the trial court stated on the record that it believed it had provided enough admonitions and that there was no harm, no foul. So in the heat of the moment, I would say the defense counsel did more than enough to preserve this objection. And we only need to look to the U.S. Supreme Court's case in Levy-Kemna to find support for that proposition. Well, and the general rule is, of course, that the state procedural bar operates only if whatever the bar is, is applied consistently in California law. And as I read the California cases, they wander around a little bit as to how much of an admonition is required, what substantial compliance and so on. So you can respond to this, but my sense is that the California law is not entirely consistently enforced. And if that's true, it cannot operate as a procedural bar. I would agree, Your Honor, and I would go one step further. The warden has not shown any cases in which this procedural bar was applied. I'm getting close to time. This procedural bar was applied in this situation where there had already been admonitions and objections, and yet the court required one more to preserve the issue. So Levy-Kemna, I think, really supports the proposition that this is not adequate as applied here. Okay. Let's hear from the other side, and you've saved some time. Good morning. Good morning. May it please the Court. Deputy Attorney General Kenneth Byrne on behalf of Respondent. The procedural bar in this case was adequate. I think the Supreme Court's recent decision in the Johnson case makes it clear that to be consistently applied, it doesn't have to be applied 100 percent of the time. And the contemporaneous objection bar in California is one of the most subtle bars that there is. What admonition should the court have given? I don't really know what admonition the court could have given other than if the defense attorney wanted to preserve a claim of prosecutorial misconduct, I think he should have said, or counsel should have asked the court, you know, admonish the jury to disregard the prosecutor's misconduct. I think the reason that that didn't happen was is that the objections that were sustained were adequate. The court in this case, and by the way, I want to make it clear that we're not challenging the California Court of Appeals finding that there was improper questions asked, nor are we challenging the finding that that was deliberate. The Court of Appeal found that, and we're not going to challenge it. I do think, however, under the ADPA's deferential standard of review, the prejudice finding should be upheld. And the reason for that is the court instructed the jury before the evidence started, and then again after the evidence was closed, not to consider questions that were asked when objections were sustained, not to speculate about what the answers would have been given had the objection not been sustained. The statements of counsel are not evidence. And in the prior argument, Judge Fletcher mentioned that you can't unring the bell. Well, in this case, the bell never rang. The expert got to say everything he was allowed to say under California law, and the jury rejected it. And the reason the jury rejected it was not because the DA kept fumbling around trying to ask questions about the intent that were improper. Wait a minute. You said fumbling around, but you already accepted the finding of the Court of Appeal that it was deliberate. I don't think it was fumbling at all. I think it was deliberate misconduct, as the Court of Appeal found. He intentionally fumbled, I guess. No, he didn't fumble. He just deliberately misbehaved. True. And the Court admonished him for it over and over again. I only respond to your talking about it as fumbling. It was not fumbling at the Court of Appeal so found. Poor choice of words on my part. But the point is this judge was very solicitous about this issue because it had been discussed before trial. And, in fact, there were times when counsel didn't object when the judge looked at him and said, Mr. Scott, do you want to object? And counsel said, sure. And the judge said, well, objection sustained. So this judge was very solicitous about that. And I think the reason that the PTSD success didn't succeed was not because of these questions that were asked and were not allowed to be answered. I think it's because the sexual abuse that's alleged in this case that the defendant suffered, obviously a horrible thing to go through, was 30 years before this offense. So that ended when he was about 12, as I recall, and he was 45 at the time of this offense. After the police came, he made the statement, now that I'm going to jail for the rest of my life, I'm going to kill you all. And I think that that showed a presence of mind and an awareness of what the situation was, his criminal history, you know, the penal consequences of what he did. I think that showed that he knew what he was doing. He had been drinking, and there was a voluntary intoxication defense that the jury could consider and rejected. And it may have been the fact that there were two conflicting defenses or two separate defenses that were submitted to the jury. Maybe that was why the defense didn't prevail. My experience, juries like to have one solid, consistent defense put to them. And when you have these kind of alternative defenses, you know, it could have been PTSD. And if it wasn't that, he was too drunk to form the specific intent. My experience is juries don't particularly care for that. But I think that when you look at this record and you look at the questions that were asked, where the objections were sustained and where the jury was repeatedly admonished, don't consider questions where there were objections sustained. Don't speculate about what the answer would have been. I think that the reason the defense failed was not because of the DA's questions. It was because it was a defense that just didn't work in the facts of this case. And the strength of the evidence. You know, you had numerous eyewitnesses saying, you know, he knew where he was. He knew what he was doing. He had been drinking, for sure, and there's no doubting that. One other thing I wanted to mention was in the opening brief, there's these statements that the jury struggled with this case, as evidenced by the fact that they asked for readbacks and for questions. And that's true. Like in many cases, the jury did ask for readbacks and for clarification. But I want to make a point that they didn't ask questions about the specific intent and they didn't ask questions about the expert in this case. Did the jury know this was a three strikes case? I don't believe so, Your Honor. They typically do not. Correct. And the trial and the strike prior came afterwards. I think after the jury was dismissed, as I recall, there was a court trial on that issue. But judges are extremely careful in California not to let juries know that it's a three strikes case. So the questions that the jury asked during deliberations had to do with readbacks of the stepdaughter, Amy, the readback of her testimony, because there were conflicts between what she said at the preliminary hearing and what she said at trial. That's common in a case, you know, domestic violence case. I think she was 15 at the time of the offense, if my memory is correct. And there were discrepancies, which defense counsel, you know, pointed out between her preliminary hearing testimony and her trial testimony. They asked for readbacks about that. They asked a question about the terrorist threat or the criminal threat statute. But the question they asked had to do with the immediate prospect that it could be carried out, not the specific intent that's required for that crime. And I think that's an important distinction to make, that although they may have been, you know, had questions about the case and the evidence, it wasn't about that element. They didn't ask for readback about the doctor's testimony. They didn't ask for clarification about what does specific intent mean. They asked for questions about other things. Under the AEDPA standard, the question is whether or not a fair-minded jurist could have found in this case that there was no prejudice given the instructions that were given. And I think that when you look at what the Superior Court judge said when the mistrial motion was said, which I think is kind of interesting, he said, it hurt him more than it hurt you. The Superior Court judge was there at the time. He had the opportunity to kind of observe this going on and what the jury's reaction to it was. And I think that that's a really interesting statement. It hurt him more than it hurt you. It hurt the prosecutor. Yes. Yeah. I mean, it didn't make the defense look bad at all. And then you have the Court of Appeal saying there was no prejudice. And then in federal court you have the magistrate judge and Judge Selna. So in terms of whether or not any fair-minded jurist could have found that there was no prejudice, in this case we've had, you know, I don't want to count them up and say that we should win because we have a total of six. But there were four state court judges and two federal bench officers that said there's no prejudice given the instructions that were given in this case and given the state of the evidence. So for those reasons, we'd ask the court to affirm the denial of relief in this case. Okay. Thank you. Your Honors, with the limited time I have left, I just want to point out that the state court and the district court both relied solely on the jury instructions that questions were not evidence and argument was not evidence to conclude that there was no harm, no foul here. But the prosecution's questions didn't insert new evidence into the proceedings. They pointed to the absence of evidence. And the jury was never told that the expert was unable to reach that ultimate conclusion under California law. There's no reason that a jury hearing that, look, this guy can't tell you he doesn't have specific intent, wouldn't thus conclude, well, I guess there must be specific intent. That's the problem here. The repeated and deliberate nature of what the prosecutor did really infected the jury's decision-making here. Well, other than page 596, in the exclusionary argument, did the prosecutor emphasize that? Did the prosecutor emphasize that the indictment had not testified to specific intent? Yes, I feel that the prosecutor did, both through his questions and in closing arguments. But where is the exclusive argument other than what you have said on Assembly Record 596? I'm going to need some assistance. Sure, so I think what he's asking is that other than on page 596, where did the prosecutor emphasize specific intent in closing argument? Okay. Let me give you that slide then. So I have on ER 597, we haven't seen evidence that actually rises to the level of showing a nexus. On ER 619, no evidence that there was a PTSD flashback. These are all issues going directly to specific intent. And on ER 620, he says there's no statement indicating Mr. Mezels was reliving past abuse. I would say that they are impermissible questions, Your Honor, because they all go to the ultimate issue of whether the PTSD negated the intent. The expert was not allowed to say at the moment he was making the threats, Mr. Mezels was suffering from a PTSD flashback. That was one step too far from where the expert was actually able to opine. It was for the jury to put together the evidence of Mr. Mezels' symptoms of hyperarousal with the circumstantial evidence at the scene that he looked crazy, that he seemed like he had snapped, and it seemed like he just wasn't there. This and other testimony could have been put together to negate the evidence of specific intent, which, again, was the prosecution's burden to prove beyond a reasonable doubt. Now, I may be having trouble, then, with the scope of California law. I understand that the expert cannot testify to his own view of the ultimate question, which is to say specific intent. That's California law. Was the expert forbidden under California law to say that in his view he was suffering a flashback? I believe he was, because that would have gone too close to the issue of specific intent. That's my belief in California law. I'm not sure that that's right, because specific intent is a legal conclusion. Suffering from an episode of a flashback, that sounds like a factual conclusion within the expertise of the expert. But I'm not sure the case standard falls on that. But I don't think California law prevents him from saying that. Okay, Your Honor. I think I just want to conclude that on the issue of specific intent, there was not overwhelming evidence presented by the prosecution. It didn't require that much for the defense to negate that showing. And accordingly, this was not harmless error. It was harmful, and relief should be granted. Okay, thank you both. Thank you both for good arguments. Mezzos v. Katowicz, submitted for decision.
judges: W. Fletcher, Owens, Moskowitz